# HARDING *v.* HARDING.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 222.    Argued April 20, 1905.—Decided May 15, 1905.

Pursuant to the statutes of Illinois, a wife living apart from her husband, both being citizens of Illinois, sued for separate maintenance alleging that she was so living on account of the husband's cruelty and adultery and without any fault on her part. The suit was contested, and, after much evidence had been taken, the husband filed a paper admitting that the evidence sustained the wife's contention, and consenting to a decree pro-

viding for separation and support on certain terms; and the wife filed a paper accepting the terms offered by the husband if the decree found that her living apart from her husband was without fault on her part. Such a decree was entered. Subsequently the husband removed to California and commenced a suit for divorce on the ground of desertion. The wife contested and pleaded the Illinois judgment as an estoppel, but the California court declined to recognize it on the ground that the issues were not the same, and also because it was entered on consent. The wife then defended on the merits and judgment was entered in favor of the husband. Reversed on writ of error and *held* that;

Under the circumstances the wife did not waive her right to assert the estoppel of the judgment by defending on the merits.

The issues involved in the Illinois case and the California case were practically the same and under the full faith and credit clause of the Constitution the California court should have held that the Illinois judgment was an estoppel against the assertion of the husband that the wife's living apart from him was through any fault on her part or amounted to desertion.

As under the Illinois statutes the judgment entered in favor of the wife was necessarily based on a judicial finding that her living apart was not through her fault the papers filed were to be regarded as consents that the testimony be construed as sustaining the wife's contention and not as mere consents for entry of judgment.

As a judgment in Illinois entered on consent has the same force as a judgment entered *in invitum*, and is entitled to similar faith and credit in the courts of another State.

THE facts are stated in the opinion.

*Mr. Pliny B. Smith,* with whom *Mr. John S. Miller* was on the brief, for plaintiff in error:

This court has jurisdiction to review the ruling of the Supreme Court of California upon this writ of error. *Andrews* v. *Andrews,* 188 U. S. 14; *Atherton* v. *Atherton,* 181 U. S. 155; *Bell* v. *Bell,* 181 U. S. 175; *Streitwolf* v. *Streitwolf,* 181 U. S. 179; *Lynde* v. *Lynde,* 181 U. S. 183; *Water Co.* v. *Railroad Co.,* 172 U. S. 475; *Bank* v. *Stevens,* 169 U. S. 432; *Huntington* v. *Attrill,* 146 U. S. 657; *Gt. W. Tel. Co.* v. *Purdy,* 162 U. S. 329.

This case comes within the second clause of § 709, because there is drawn in question the validity of an authority exercised by the Supreme Court of California, on the ground of its being repugnant to the Constitution and laws of the United States. It makes no difference by what department of the

State the authority was exercised the validity of which is called in question. *Railroad Co.* v. *Chicago,* 166 U. S. 226, 233, 234.

If the decision of the Federal question was necessarily involved in the state court, and the case could not have been determined without deciding such question, this is sufficient. Cases cited *supra* and *Chapman* v. *Goodnow,* 123 U. S. 540. It is sufficient that it appears from the record that such rights were specially set up in such manner as to bring it to the attention of that court, *Green Bay &c. Co.* v. *Patent Paper Co.,* 172 U. S. 58, 67, or that it was the necessary effect of the judgment. *Roby* v. *Colehorn,* 146 U. S. 153. *Streitwolf* v. *Streitwolf,* 181 U. S. 179; *Lynde* v. *Lynde,* 181 U. S. 183.

Here the Federal question was in fact the only question decided by the Supreme Court of California. And see also *Chicago L. I. Co.* v. *Needles,* 113 U. S. 574; *Eureka Lake* v. *Yuba County,* 116 U. S. 410; *Arrowsmith* v. *Harmoning,* 118 U. S. 195; *Kaukauna County* v. *Green Bay &c. Co.,* 142 U. S. 257, 271; *Railroad Co.* v. *Adams,* 180 U. S. 28; *Railroad Co.* v. *Osborn,* 193 U. S. 17, 28; *Laing* v. *Rigney,* 160 U. S. 531.

The opinion of the state court may be examined for the purpose of determining whether the Federal question was presented and decided. *Phil. Fire Assn.* v. *New York,* 119 U. S. 110, 116.

Under the Fourteenth Amendment, proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process. *Pennoyer* v. *Neff,* 95 U. S. 714, 733.

Jurisdiction of the subject matter in actions of divorce depends upon domicil, and without such domicil there was no authority to decree a divorce. Cases cited *supra.*

A point which was actually and directly in issue in a former suit, and was there judicially passed upon and determined by a domestic court of competent jurisdiction, can not be again drawn into question in any future action between the same parties or their privies, whether the causes of action in the two suits be identical or different. Black on Judges, § 504;

*Stockton* v. *Ford,* 18 How. 414; *Hopkins* v. *Lee,* 6 Wheat. 109; *Smith* v. *Kernochan,* 7 How. 198; *Young* v. *Black,* 7 Cranch, 565; *Gaines* v. *Miller,* 111 U. S. 395; *Eldred* v. *Bank,* 17 Wall. 575; *Marine Ins. Co.* v. *Young,* 1 Cranch, 332; *Thompson* v. *Roberts,* 24 How. 233; *Goodrich* v. *Chicago,* 5 Wall. 566; *Foster* v. *The Richard Busteed,* 100 Massachusetts, 412.

A final decree in chancery is as conclusive as a judgment at law. *Shriver* v. *Lynn,* 2 How. 43; *Bridge Co.* v. *Stewart,* 3 How. 413; *Pennington* v. *Gibson,* 16 How. 65; *Nations* v. *Johnson,* 24 How. 195; *Bryan* v. *Bennett,* 113 U. S. 179.

The issues in the California case and in the Illinois case were identical; and they were treated as identical by the California court. The fact that the two actions were different in form makes no difference as respects the faith and credit clause of the Constitution.

The California court was bound by the adjudication by the Illinois court, and, in disregarding the Illinois decree the California court deprived plaintiff in error of a right under the Federal Constitution and statutes. Const. U. S., Art. IV, § 1; Rev. Stat. § 905.

The clause referred to applies to decrees of divorce, *Atherton* v. *Atherton,* 181 U. S. 155, and means that the court of a State must allow to a judgment of a sister State the same effect that it has in the State where rendered. *Mills* v. *Duryee,* 7 Cranch, 481; *Renaud* v. *Abbott,* 116 U. S. 277; *Hilton* v. *Guyot,* 159 U. S. 113, 181.

While this court, on writ of error to the Supreme Court of a State, will not take judicial notice of the law of another State, yet where the court, whose decision is under review, does take judicial notice of the law of another State, this court will do the same. *Renaud* v. *Abbott,* 116 U. S. 277; *Hanley* v. *Donoghue,* 116 U. S. 1.

The Illinois judgment was not a consent decree. The judgment speaks for itself. *Campbell* v. *Wilson,* 195 Illinois, 284; *Armstrong* v. *Cooper,* 11 Illinois, 540.

Even if the decree were a consent decree it would have the

same binding effect as though it were a decree *in invitum*. *Knoblock* v. *Mueller*, 123 Illinois, 554, 565; *O'Connell* v. *Railway Co.*, 184 Illinois. 308, 325; *Lagerquist* v. *Williams*, 74 Ill. App. 17.

A judgment upon a *cognovit* concludes the parties.

A judgment entered, where upon trial a party waives proof of and formally admits a fact, is conclusive. A judgment rendered upon an admission of fact or by consent, is conclusive on the parties to the same extent as though rendered upon a. contest. Black on Judgments, § 705; *Railway Co.* v. *United States*, 113 U. S. 261; *Burgess* v. *Seligman*, 107 U. S. 20; *Thomson.* v. *Wooster*, 114 U. S. 104; *Bank* v. *Higginbottom*, 9 Pet. 48; *United States* v. *Parker*, 120 U. S. 89. The rule also applies to judgments by default. *Harshman* v. *Knox Co.*, 122 U. S. 306. Also to judgment on demurrer. *Gould* v. *Railroad Co.*, 91 U. S. 526; *Bissell* v. *Springvalley*, 124 U. S. 225.

The Supreme Court of California misconceived the Illinois decisions and rule. *Wadhams* v. *Gay*, 73 Illinois, 415, and *Farwell* v. *Gt. West. Tel. Co.*, 161 Illinois, 522, distinguished.

The rule in California is, that in the absence of proof, the courts of California will presume that law of another State to be the same as the law of California. *Shumway* v. *Leskey*, 67 California, 458. The presumption is even extended to the statute law of California. *Cavallaro* v. *Railroad Co.*, 110 California, 348. Applying the rule of California, a judgment by stipulation is conclusive as to all matters within the issue. *McCreery* v. *Fuller*, 63 California, 30; *Partridge* v. *Shepard*, 71 California, 470.

The State of California never was the matrimonial domicil of the parties, and, therefore, the courts of California had no jurisdiction of their matrimonial *status*, and the decree of the California court was consequently for this reason also, erroneous.

Mrs. Harding had always, since her marriage, lived in Illinois. California had never been the matrimonial domicil of the parties and it is to be presumed her residence, the *status*

and the matrimonial domicil remained in Illinois. Cal. Civ. Code Proc. § 1693, par. 32.

A suit for a divorce is a proceeding *in rem*. The *status* of the parties is the *res*. In a proceeding *in rem* the jurisdiction of the court over the *res* must affirmatively appear.

The matrimonial *status*—the *res*—was created and established in Illinois, it not appearing that this *status* had ever been removed to California, the California courts had no jurisdiction of the suit. In a proceeding *in rem* the court will not presume that the *res* existed within the jurisdiction of the court, but it must be averred and proved.

This court has not, as yet, directly passed upon the points made in this division of the brief, but in several cases it has especially reserved the question. *Bell* v. *Bell*, 181 U. S. 175; *Streitwolf* v. *Streitwolf*, 181 U. S. 179; *Andrews* v. *Andrews*, 188 U. S. 14, 40.

*Mr. William H. Barnum* for defendant in error:

The Illinois decree and the decree as modified was not final, irrevocable and immutable, but the allowances thereby made were subject to alteration, reduction and even extinguishment. *Audubon* v. *Shufeldt*, 181 U. S. 575; *Welty* v. *Welty*, 195 Illinois, 345; *Cutler* v. *Cutler*, 88 Ill. App. 464.

It is doubtful whether any decree so alterable, revocable, interlocutory or non-final in its nature can be in any case successfully pleaded as a bar or estoppel.

Neither the decree, the modified decree, nor the stipulation, nor all combined, created a bar or estoppel against the prosecution of the California divorce suit, nor against proving therein the truth of the charge of willful desertion, nor against proving any fact whatever essential or material to the establishment of said charge.

The stipulation to the effect that she was living apart without her fault is to be treated not as a statement made because it was true, or from any conviction of its truth, but only as a convenient assumption for the purpose in hand, the ending

of litigation and adjustment of family differences; hence neither the stipulation nor decree based on it can be held as an estoppel. Greenleaf, Ev. § 204; *Succession of Harris*, 39 La. Ann. 443.

The decree, so entered, was not a judicial determination, but absolutely void, and not entitled to respect in any other tribunal, as an estoppel or otherwise. *Windsor* v. *McVeigh*, 93 U. S. 274; *Gay* v. *Parport*, 106 U. S. 679.

The issues in the two cases were not identical, hence there was no estoppel. *Wahle* v. *Wahle*, 71 Illinois, 513; *Umlauf* v. *Umlauf*, 117 Illinois, 584; Freeman on Judgments, § 258; *Burlen* v. *Shannon*, 3 Gray, 387; *Sawyer* v. *Woodbury*, 7 Gray, 502; *Megerle* v. *Ashe*, 33 California, 74, 84; *Howe* v. *Lockwood*, 17 N. Y. Supp. 817; *Pearce* v. *Frantum*, 16 La. Ann. 414.

Mr. Harding, while entitled if he chose to make the wife's willful desertion after it had continued two years a distinct issue in the maintenance case by filing an answer and prosecuting a cross bill distinctly and directly making it such an issue and praying for a divorce on that ground, was not obliged to do so; but might confine his defense wholly to the charge made by his wife, without thereby losing or surrendering his reserved right to ask for a divorce on the ground of willful desertion or any other statutory ground. *Cromwell* v. *Sac County*, 94 U. S. 351, 371; *Watts* v. *Watts*, 160 Massachusetts, 464.

Further, there was no identity of the question raised under the Illinois statute in the Illinois court—even if that question had been litigated and judicially determined—with the question raised by the pleadings in divorce case. *Russell* v. *Place*, 94 U. S. 606; *Beronio* v. *Ventura Lumber Co.*, 129 California, 236.

To constitute estoppel by matter of record there must be entire identity of the issue decided and the issue to which the estoppel is sought to be applied, and for additional illustration of the rule, see *Freeman* v. *Barnum*, 131 California, 386; *McDonald* v. *B. R. &c. M. Co.*, 15 California, 145; *Williams*

v. *Williams*, 63 Wisconsin, 58; *Aspen* v. *Parker*, 2 Burr. 666.

Further the estoppel fails because the finding in the present case does not relate to the same time as the finding in the former case, and hence the estoppel lacks the identity required. *King* v. *Chase*, 15 N. H. 16; Coke upon Littleton, L. 3, c. 12, § 567; Bigelow on Estoppel, 3d ed., 578, and p. 77; *People* v. *Frank*, 28 California, 507; *Brown* v. *Mayer*, 66 N. Y. 385; *Blair* v. *Bartlett*, 75 N. Y. 150; *Nemetty* v. *Moylin*, 100 N. Y. 562; *Orr* v. *Mercer County Ind. Co.*, 114 Pa. St. 367.

Findings outside the issues have no effect as to estoppel. *Lillis* v. *Erie Ditch Co.*, 95 California, 858; *Russell* v. *Place*, 94 U. S. 606.

Only upon issues upon which judgment depends are parties estopped. 1 Greenleaf, § 528; *McDonald* v. *Black Co.*, 15 California, 145; *Gray* v. *Dougherty*, 25 California, 272; *Bozquit* v. *Crane*, 51 California, 505; *Sawyer* v. *Boyle*, 21 Texas, 28; *Lentz* v. *Williams*, 17 Pa. St. 412; *Lewis* v. *Nelson*, 67 Pa. St. 153; *Ford* v. *Ford's Adm.*, 68 Alabama, 41; *Car* v. *Buehler*, 120 Pa. St. 341; *Williams* v. *Williams*, 63 Wisconsin, 58; *People* v. *Johnson*, 38 N. Y. 63; 2 Smith's L. Cas., 10th ed., 2013; *Murdock* v. *Memphis*, 20 Wall. 590.

MR. JUSTICE WHITE delivered the opinion of the court.

The law of Illinois (Laws of Illinois, 1877, p. 115) provided as follows:

"That married women who, without their fault, now live or hereafter may live, separate and apart from their husbands, may have their remedy in equity in their own names, respectively, against their said husbands for a reasonable support and maintenance while they so live separate or have so lived separately and apart; and in determining the amount to be allowed the court shall have reference to the condition of the parties in life, and the circumstances of the respective cases; and the court may grant allowance to enable the wife to prosecute her suit, as in cases of divorce."

On February 3, 1890, Adelaide M. Harding filed her bill in the Circuit Court of the county of Cook against her husband, George F. Harding.

It was alleged that the parties were residents of the city of Chicago. In substance, in the bill and an amendment, it was charged that, without her fault and in consequence of the cruel treatment of her husband and of his adultery, the plaintiff had been obliged to live apart from him. It was prayed that the court decree that she was so living apart without her fault, that it would award her the custody of certain of the children of the marriage, and that the defendant be decreed to provide for the separate maintenance of the complainant and the support of the children. The answer and an amendment thereto admitted the marriage, the birth of the children and the residence in Chicago, denied the charges of cruelty and other misconduct, and averred that the complainant was living apart solely through her own fault, and that she had refused to return after repeated requests, which were reiterated in the answer.

We shall hereafter, as far as possible, refer to the parties to that litigation, who are the parties to this suit, as the wife and the husband, respectively.

The court, by an interlocutory order, fixed a sum to be paid by the husband for the fees of the solicitors of the wife, for the maintenance of the wife during the pendency of the cause, and for the support of the minor children.

The case was put at issue and much testimony was taken. With this testimony extant and nearly three years after the commencement of the suit, on January 3, 1893, a document was filed in the papers of the cause signed by the husband and by his solicitor. In substance the paper recited that at the time of the commencement of the suit the wife had in her hands a considerable amount of property and money belonging to the husband which was applicable to her maintenance, and that when this sum was expended the husband would feel it his duty to furnish further money to support the wife,

whatever might be the result of the cause.  That the husband
was confident of making a successful defense to the suit, but
that it seemed to him it was best for the sake of peace and to
avoid scandal to put an end to the litigation by consenting to
a decree in favor of the wife for a separate maintenance. the
paper further stating:

"Hence, I give my consent that a decree for separate main-
tenance shall be entered in favor of the plaintiff without find-
ing or trial of the issue in this case. That this consent is not
collusive is sufficiently shown by the length and character of
the litigation. I further offer and stand ready to make such
other or further or different stipulation by an amendment of
the pleadings or otherwise, as may, in the opinion of your
honor, be required to make it unnecessary for the court to
hear and decide upon the issues in evidence in this case after
a long and expensive hearing. To this end I declare my
willingness to stipulate and I do hereby stipulate that the
plaintiff, at the time of the commencement of this suit, was
living and ever since has been living separate and apart from
her husband without her fault, and may take a decree with
my consent for such sum as may be reasonable and just for
her separate maintenance. This is the same offer which I
have made by way of an attempt at compromise ever since
the commencement of this suit, in which effort at compromise
I have not hesitated to offer double the amount that in my
opinion should be allowed for her separate maintenance by
the court."

The wife, on January 17, 1893, filed a counter statement.
She in substance declared that she had no previous knowledge
of the intention of her husband to file the paper which he had
submitted to the court; that she had always been confident
of the justice of her cause and of maintaining the same, and
that the testimony then taken in the cause gave her great
certainty of the establishment of her rights; that she had
always been willing to adjust the amount to be allowed for
her separate maintenance, provided there was a "finding and

decree of this court thereon that she was, at the time of the filing of the bill herein, living separate and apart from the defendant without fault on her part and has been so living ever since." The statement then referred to certain negotiations which had been pending between the husband and wife on the subject of the amount of separate maintenance to be allowed, enumerated previous offers made by the husband on this subject, which she had been unwilling to accept, because the husband had insisted on either the dismissal of her suit, a decree in his favor or an agreement which would not preclude him from suing for a divorce for desertion arising from her having separated from him. It was then stated, in substance, that, as interpreted by the wife, the paper filed by the husband waived the conditions which he had previously insisted upon and assented to a decree finding that the separation was without her fault, and she was willing for the sake of preventing further scandal, to accept the amount previously offered by the husband, although deeming the sum inadequate to her condition of life, "upon the decree finding that complainant was living separate and apart from defendant without fault on her part, being now promptly entered such as the said voluntary stipulation of the defendant justifies." No action appears to have been taken by the court upon these two papers except in so far as may be inferred from the statements which follow.

In May, 1893, the court entered an order referring the cause to a master to take further evidence as to the amount of alimony, etc., to be awarded, "and upon other issues herein than the question as to whether complainant at the time of the commencement of this suit was, and since that time has been and is, living separate and apart from her husband, the defendant, without her fault, said defendant having admitted upon the record herein, and now admitting in open court, that the complainant was living separate and apart from him without fault on her part."

Nearly three years after the matter had been thus referred

to the master the order of reference was amended *nunc pro tunc*, as of the date of the previous order, by substituting for the words "and now admitting in open court" the words "as by his written stipulation filed herein on January 3, 1893, and for the purpose of this trial only." A few months thereafter the master filed his report. Therein he stated his conclusions deduced from the evidence taken prior to 1894 on the subject of the right of the wife to her separate maintenance, and found as a matter of fact that her right was established by the proof. He also found that the wife was entitled to a stated sum for her separate maintenance and an additional sum for the support of the children. Exceptions were filed to the report, which were heard by the court, and a final decree was rendered on July 26, 1897. It was recited, among other things, in this decree that the court, "doth find that the said complainant, at the time of the commencement of this suit, was living, and ever since that time has lived, and is now living, separate and apart from her husband, the said defendant, without her fault, and that the equities of this cause are with the complainant." The decree awarded to the wife sums for her separate maintenance and for the support of the children up to the time of their becoming of age, and a further sum for the fees of the solicitors of the wife and other expenses of the litigation. The decree made no reference to the admission contained in the paper filed by the husband, nor was any statement made which limited the effect of the decree as a final adjudication of the rights of the parties. An exception, on behalf of the husband, was taken to each and every finding of the decree, and sixty days were allowed to prepare a certificate of evidence.

It would seem from the certificate of evidence, which was made several months afterwards, that on the settlement of the decree a controversy arose as to its terms, the wife requesting the court to state in the decree that all the charges made in the complaint and the amended complaint as to cruelty, adultery, etc., had been established by the proof; the

husband insisting, to the contrary, that the charges had not been proven, and further asserting that it was not necessary to so find because of his admission of record. The court said that it did not pass upon the question as to whether all the charges made in the complaint were true, because it regarded it as unnecessary "in view of the said paper of the defendant filed herein January 3, 1893."

The husband prosecuted an appeal to the Appellate Court of Illinois for the First District. But before this appeal was perfected, and on August 31, 1897, he commenced in the Superior Court of San Diego, California, this suit against his wife for divorce. The marriage in 1855 and the residence in Chicago were alleged, but it was averred that ever since May 15, 1895, the plaintiff had been a resident of the State of California. The sole ground alleged for granting the divorce was willful desertion by the wife in the month of February, 1890. The answer of the wife denied that the husband was a resident of California, and in a separate paragraph there was specially pleaded the proceedings and the decree of the Illinois court and the admission of the husband on the record therein as to the separation being without the fault of the wife, all of which it was asserted established by the thing adjudged that her living apart was justified and did not constitute desertion.

In the meanwhile, before the trial of the cause, the appeal prosecuted in the Illinois case by the husband was decided against him in the Appellate Court, and he took an appeal to the Supreme Court of Illinois, in which court the judgment was affirmed, with a modification as to the amount of the allowance for alimony, and the trial court changed the amount of its decree accordingly. The wife then by an amended answer again set up the decree in Illinois as amended as *res judicata.*

On the trial the wife introduced in evidence a certified copy of the record of the Illinois suit. The husband introduced, over the wife's objection and exception, a portion of the certificate of evidence, which had been prepared for the pur-

pose of the appeal from the final decree in Illinois as originally entered. The court made findings of fact to the effect that the parties had been married in Illinois, that the husband was a *bona fide* resident of California, and that on the first day of February, 1890, the wife had deserted her husband without just cause. As a conclusion of law it was deduced that the husband was entitled to a divorce, but that the court was without power in any way to limit or affect the decree for separate maintenance rendered by the Illinois court. After the refusal of a new trial the wife appealed to the Supreme Court of California, and that court affirmed the decree. 140 California, 690.

The question is, Did the Supreme Court of California fail to give due faith and credit to the decree for separate mainte-nance rendered in favor of the wife in Illinois, which was pleaded by the wife as *res judicata.*

It is suggested in argument that that question cannot be passed upon, as the wife, besides pleading and relying upon the Illinois decree, defended on the merits, and by so doing waived the benefits of the alleged estoppel arising from the Illinois decree. The want of merit in the contention is at once demonstrated by the statement that the Supreme Court of the State of California, in its opinion in the cause, treated the question of estoppel by the Illinois judgment as being open, and actually determined it.

The Supreme Court of California decided that the Illinois decree was not conclusive in California as to the question of desertion, for the following reasons: That decree, the court held, was a consent decree, and being of that character it was not a bar in the State of Illinois. As it was held that the Illinois decree was only entitled in California, under the due faith and credit clause, to the effect which it would have in Illinois, it was hence decided that the Illinois decree did not constitute an estoppel in the courts of California. But we are of opinion that the premise upon which the Supreme Court of California proceeded was a mistaken one and its conclusion

based thereon was erroneous, even if the correctness of the premise be conceded for the sake of the argument.

The conclusion of the Supreme Court of California, that the Illinois decree was solely based on the consent of the parties, and was consequently not the result of the action of the court, was based on the following: 1. The paper filed by the husband on January 3, 1893. 2. The recital in the amended order of reference that the admission that the wife was without fault had been made for the purpose of the trial only. 3. The statement of the trial judge, made in the certificate of evidence, that in view of the admission on the record he had not found it necessary to pass upon all the charges made in the complaint.

But the conclusion drawn by the court from these matters assumed that a decree for separate maintenance under the Illinois statute could have been a mere matter of consent, and did not require the ascertainment by the court of the facts made essential by the statute to justify such a decree. That this was a mistaken conception of the Illinois law has been clearly pointed out by the Supreme Court of that State. In *Johnson v. Johnson,* 125 Illinois, 510, an appeal from a decree for separate maintenance, the court said (p. 514):

"To maintain her bill, it was necessary for the complainant to show, not only that she had good cause for living separate and apart from her husband, but also that such living apart was without fault on her part. At common law, the husband was liable, in an action at law at the suit of any person furnishing to the wife necessaries suitable to her condition in life, if the wife was residing apart from him because of his willful and improper treatment of her, or by his consent. 2 Kent's Com. 146; *Evans* v. *Fisher,* 5 Gilman, 571. No right of action existed in the wife, courts of equity refusing to take cognizance at her suit, and enforce the legal obligation of the husband to maintain her. 2 Story, Eq. Jur. § 1422. The statute was passed to remedy this defect in the law, and gave the right to the wife to maintain her bill for separate maintenance, but

restricted the right to cases where the living separate and apart from the husband was without her fault. The 'fault' here meant and contemplated is a voluntary consenting to the separation, or such failure of duty or misconduct on her part as 'materially contributes to a disruption of the marital relation.' If she leave the husband voluntarily, or by consent, or if her misconduct has materially induced the course of action on the part of the husband upon which she relies as justifying the separation, it is not without her fault, within the meaning of the law. *No encouragement can be given to the living apart of husband and wife. The law and good of society alike forbid it.* But a wife who is not herself in fault is not bound to live and cohabit with her husband if his conduct is such as to directly endanger her life, person or health, nor where the husband pursues a persistent, unjustifiable, and wrongful course of conduct towards her, which will necessarily and inevitably render her life miserable, and living as his wife unendurable. Incompatibility of disposition, occasional ebullitions of passion, trivial difficulties, or slight moral obliquities, will not justify separation. If the husband voluntarily does that which compels the wife to leave him, or justifies her in so doing, the inference may be justly drawn that he intended to produce that result, on the familiar principle that sane men usually mean to produce those results which naturally and legitimately flow from their actions. And if he so intended, her leaving him would, in the case put, be desertion on his part, and not by the wife."

In the second place, even if the rule of public policy enunciated by the Supreme Court of Illinois be put out of view, the assumption that the Illinois decree was a consent decree, merely registering an agreement of the parties, disregards the form of that decree, and cannot be indulged in without failing to give effect to the very face of the decree, which adjudged that the separation of the wife from the husband was without her fault. This was an express finding by the court, and one which the law required to be judicially made.

In the third place, if it be conceded that the express terms of the decree could be overcome by considering matters contained in the record, but outside of the decree, the conclusion drawn by the Supreme Court of California from the consideration of such matters was, we think, a mistaken one. As we have said in stating the facts, after the bringing of the suit for separate maintenance, in which charges of the gravest character were made against the husband as to cruelty, adultery, etc., much testimony had been taken with regard to the charges. And it was in this state of the case that the *ex parte* stipulation of the husband was filed, in which he admitted that the wife was living separate and apart from him without her fault. The declaration in the statement that it was not collusively made eliminates the conception that the admission was made regardless of its truth and independently of the facts shown by the testimony which had theretofore been taken in the cause. When it is observed that shortly following the filing of this paper the statement of the wife was filed accepting her husband's admission as conceding that the proof established that the separation was not caused by her fault, and stating that she had refused the solicitation of the husband to discontinue the cause and accept an allowance to be made by him for her separate maintenance upon an agreement that so doing should not prejudice him if he sued for a divorce on the ground of desertion, it becomes impossible to hold that the decree was a mere registering of an agreement between the parties, and not the judicial action of the court. Certainly, when the papers filed by the husband and wife are considered, there is no room for the contention that a judicial finding was not made. True, the paper filed by the husband expressed his desire to avoid such a finding, but, instead of consenting to his proposition, the paper filed by the wife insisted that she was entitled to the finding, that she had always refused to waive it, and that she demanded it. The court obviously considered that the wife was entitled to the right which she thus claimed, since it made the very finding upon which the wife insisted, and which the

paper filed by the husband sought to avoid, and the conduct of the husband, in excepting to the finding as made by the court, demonstrates that he regarded it as a judicial determination of the issue of absence of fault on the part of the wife. And the modified order of reference gives rise but to the inference that in view of the admission of the husband it was not deemed necessary, for the purpose of the *trial*, to take further testimony in respect to the conceded fact, or for the master to report in detail concerning the evidence as to the misconduct of the husband which led to the separation. This also explains the statement of the judge, made in the certificate of evidence, as to the controversy regarding the terms of the decree, and his refusal to find that *all* the charges made in the bill had been proven. This view of the matters relied upon by the California court was the one expressly adopted by both the Appellate Court and by the Supreme Court of Illinois in deciding the appeal taken by the husband. On that appeal, as we have said, he complained of the action of the court, including the finding that the wife was living separate without fault on her part. 79 Ill. App. 590; 180 Illinois, 481.

Both of the Illinois courts, in considering the objection that the trial court was without power to make a finding concerning the absence of fault on the part of the wife because of the consent manifested by the paper filed by the husband, treated that paper not as a mere consent to a decree in relation to that subject, but as an admission concerning the state of the proof in the record, which, whilst it rendered it unnecessary for the court to analyze the proof, did not deprive it of the power to make a judicial finding of the fact. It is to be observed also that both courts held that on the issue as to the custody of the minor children and the sum to be allowed for separate maintenance, the inquiry into the conduct of the husband was relevant and required an analysis of the testimony, an analysis which embraced necessarily those elements of proof which entered into the question of the causes of the separation.

But if it be considered that in any aspect the decree under

review was a consent decree, we are of opinion that the cases relied upon by the Supreme Court of California, *Wadhams* v. *Gay,* 73 Illinois, 417; *Farwell* v. *Great Western Tel. Co.,* 161 Illinois, 522, are not authoritative upon the proposition that such decree would not in the courts of Illinois have the effect of *res judicata.* The first of the cases—considered by this court in *Gay* v. *Parpart,* 106 U. S. 689 *et seq.*—dealt merely with the right of a court of equity to refuse to lend its aid to enforce an incomplete and ineffective decree in partition proceedings, because to do so would be inequitable. In the second of the cases it was but decided that a fraudulent decree might be set aside in a court of equity.

The general rule in Illinois undoubtedly is that a consent decree has the same force and effect as a decree *in invitum.* *Knobloch* v. *Mueller,* 123 Illinois, 554; *O'Connell* v. *Chicago Terminal R. R.,* 184 Illinois, 308, 325. Thus, in *Knobloch* v. *Mueller,* the court said (123 Illinois, 565):

"Decrees of courts of chancery, in respect of matters within their jurisdiction, are as binding and conclusive upon the parties and their privies as are judgments at law; and a decree by consent in an amicable suit, has been held to have an additional claim to be considered final. *Alleson* v. *Stark,* 9 Adol. & E. 255. Decrees so entered by consent cannot be reversed, set aside, or impeached by bill of review or bill in the nature of a bill of review, except for fraud, unless it be shown that the consent was not, in fact, given, or something was inserted as by consent that was not consented to. 2 Daniell, Ch. Pr. 1576; *Webb* v. *Webb,* 3 Swanst. 658; *Thompson* v. *Maxwell,* 95 U. S. 391; *Armstrong* v. *Cooper,* 11 Illinois, 540; *Cronk* v. *Traubbe,* 66 Illinois, 432; *Haas* v. *Chicago Building Society,* 80 Illinois, 248; *Atkinson* v. *Mauks,* 1 Cow. 693; *Winchester* v. *Winchester,* 121 Massachusetts, 127; *Alleson* v. *Stark,* 9 Adol. & E. 225; *Earl of Hopetoun* v. *Ramsay,* 5 Bell's App. Cas. 69. See also, note to *Duchess of Kingston's Case,* 2 Smith Lead. Cas. *826 *et seq.* It is the general doctrine that such a decree is not reversible upon an appeal or writ of

error, or by bill of review for error. *Armstrong* v. *Cooper*, 11 Illinois, 540."

And the assertion that the particular matters relied upon in this cause are of such a character as to take this case out of the rule just stated, is conclusively shown to be without merit by the decision of the Appellate Court and the Supreme Court of Illinois, affirming the decree of separation and the finding therein made.

In the argument at bar there is a ground taken which was not referred to in the opinion of the Supreme Court of California, which it is insisted shows that that court was right in its decision, although the reasoning of its opinion may be conceded to have been erroneous. That ground is this. In Illinois it is contended it has been settled that a decree in a suit for separate maintenance is not *res judicata* in a suit for divorce on the ground of desertion, and *vice versa*, therefore the Illinois decree should not have been given in California any greater effect. Two cases are relied upon. *Wahle* v. *Wahle*, 71 Illinois, 510, and *Umlauf* v. *Umlauf*, 117 Illinois, 580. But these cases do not sustain the proposition based on them. In the *Wahle case* the husband had sued his wife for divorce on the ground of abandonment, and she, in addition to answering, had filed a cross bill charging the husband with cruelty and adultery, and praying for separate maintenance. The principal cause was first heard and decided adversely to the husband. Subsequently the cross bill was heard and a decree of dismissal was rendered. This was alleged to be error, on the ground that the verdict of the jury on the issue of divorce, in favor of the wife, was a judicial determination, establishing the facts alleged in her cross bill, and justifying her in living apart from her husband. But the Supreme Court of Illinois held that as the verdict of the jury in the divorce suit was general, and did not indicate upon what particular finding it was based, the court could not know upon what fact the jury were induced to find as they did, and that in consequence the bill did not necessarily establish that the separation of the

parties was without fault on the part of the wife, since the verdict might have proceeded upon either of the following grounds: 1, that the abandonment was for less than two years; 2, that it was by mutual consent; or, 3, that it was induced by the acts of the husband, whatever might have been the fault of the wife.

In *Umlauf* v. *Umlauf*, the wife filed a bill for separate maintenance but failing to establish her right the bill was dismissed. Subsequently the husband filed a bill for divorce, charging willful desertion by the wife from the date of the filing of her bill against him for separate maintenance. Upon the hearing of the divorce case the court admitted in evidence against the objection of the wife the pleadings and the decree against her in the suit for separate maintenance, and also excluded all evidence on her part tending to disprove the charge of desertion. From a judgment granting the divorce the wife appealed. The Supreme Court of Illinois prefaced its consideration of the question with the following statement (p. 584):

"No principle is better settled than that where a question, proper for judicial determination is directly put in issue, and finally determined in a legal proceeding by a court having competent authority and jurisdiction to hear and determine the same, such decision and determination of the question will be deemed final and conclusive upon the parties and their privies in all future litigation between them in which the same question arises, so long as the judgment remains unreversed or is not otherwise set aside."

But the court held that these elementary principles did not apply, because the decree against the wife in the separate maintenance suit was general and might have been entered solely upon the ground that the wife was not without fault, leaving undecided the question whether the husband was in any way at fault, and, therefore, there was not identity, and resulting *res judicata*.

The inappositeness of these cases to the present one be-

comes obvious when it is recalled that in this case there was a
decree not against but in favor of the wife in the maintenance
suit, which decree necessarily conclusively settled that the
separation was for cause and was without fault on the part of
the wife, and therefore was not a willful desertion of the hus-
band by the wife, which is the precise issue in the divorce case
now here.

In the brief of counsel it is stated that under the law of
California, if a wife is living apart from her husband under
circumstances which do not constitute desertion, yet such
living apart may become desertion if the husband in good
faith invites the wife to return and she does not do so. In
this connection reference is made to certain requests proffered
by the husband for the wife to return, which it is urged caused
the separation to become desertion under the California law.
But conceding, without deciding, that the California law is as
asserted, the proposition of fact upon which the argument
rests amounts simply to denying all effect to the Illinois de-
cree. This follows, because all the requests to return referred
to were made in Illinois before the entry of the final decree in
the suit for separate maintenance, were referred to in the an-
swer in that case, and were adversely concluded by the judg-
ment which was rendered.   *Johnson* v. *Johnson,* 125 Illinois, 510.

Having thus disposed of all the contentions based upon the
assumed consent under the decree for separate maintenance
or the asserted limitations to such a decree, based upon the
law of Illinois, we are brought to consider the final question
which is, Was the decree in favor of the wife for separate
maintenance entered in the Illinois case conclusive upon the
husband in the courts of California of the issue of willful
desertion? That the issue of willful desertion present in the
divorce action was identical with the issue of absence without
fault presented in the Illinois maintenance suit, is manifest.
The separation asserted by the wife in her bill for separate
maintenance to have been without her fault was averred to
have taken place on February 1, 1890, and such separation

was stated by the husband in his answer to the bill to have been an abandonment and desertion of him. The willful desertion charged in the complaint in this action for divorce was averred to have been committed "on or about the month of February, 1890, and to have been continuous thereafter." And the identity between the two is further demonstrated by the circumstance that the evidence taken in the Illinois case bearing upon the cause for the separation was used upon the trial in this case. The question in each suit, therefore, was whether the one separation and living apart was by reason of the fault of the wife. From the standpoint of a decree in favor of the wife in the suit for separate maintenance the issues raised and determined were absolutely identical.

The controversy before us is, in some respects, like that which was considered in *Barber* v. *Barber*, 21 How. 582. There a bill was filed in a Federal court in Wisconsin to enforce judgment for alimony under a decree of separation *a mensa et thoro*, rendered against a husband in New York. It was shown by the evidence that to avoid the payment of the alimony the husband had left the State of New York, the matrimonial domicil, and taken up his residence in the State of Wisconsin, where he obtained a decree of divorce on the ground of desertion by the wife. Whilst this court refrained from expressing an opinion as to the legality of the Wisconsin decree of divorce obtained under these circumstances, it enforced the New York judgment for alimony, and held it to be binding. And that it was considered that the judgment in New York legalizing the separation precluded the possibility that the same separation could constitute willful desertion of the wife by the husband, plainly appears from the following excerpt from the opinion —italics mine (p. 588):

"It also appears, from the record, that the defendant had made his application to the court in Wisconsin for a divorce *a vinculo* from Mrs. Barber, without having disclosed to that court any of the circumstances of the divorce case in New York; and that, *contrary to the truth, verified by that record,* he

asks for the divorce on account of his wife having willfully abandoned him."

So also the courts of Massachusetts have held the fact to be that a separation legalized by judicial decree was a conclusive determination that the same separation was not willful desertion. Thus in *Miller* v. *Miller*, 150 Massachusetts, 111, explicitly approved in *Watts* v. *Watts*, 160 Massachusetts, 464, after holding that an adjudication of a probate court that a wife is living apart from her husband for justifiable cause, was a bar to an action by the husband for divorce on the ground of utter desertion, the court, speaking of the decree of the probate court, said:

"The fact determined by it is inconsistent with the necessary allegation in the libel, that the libellee previously had utterly deserted the libellant, and was then continuing such desertion. Utter desertion, which is recognized by the statute as a cause for divorce, is a marital wrong. Because the deserter is a wrongdoer, the law gives the deserted party a right to a divorce. If a wife leaves her husband for a justifiable cause, it is not utter desertion within the meaning of the statute, and a wife who has utterly deserted her husband, and is living apart from him in continuance of such desertion cannot be found to be so living for justifiable cause. *Pidge* v. *Pidge*, 3 Metc. 257, 261; *Fera* v. *Fera*, 98 Massachusetts, 155; *Lyster* v. *Lyster*, 111 Massachusetts, 327.

"The court should have ruled as requested by the libellee, that the decree of the probate court was a bar to the maintenance of this libel. Exceptions sustained."

We are of opinion that the final decree of July 26, 1897, entered in the Circuit Court of Cook County, Illinois, in legal effect established that the separation then existing and which began contemporaneously with the filing of the bill in that cause in February, 1890, was lawful, and therefore conclusively operated to prevent the same separation from constituting a willful desertion by the wife of the husband. From these conclusions it necessarily follows that the issue presented in

this action for divorce was identical with that decided in the suit in Illinois for separate maintenance. This being the case it follows that the Supreme Court of California in affirming the judgment of divorce failed to give to the decree of the Illinois court the due faith and credit to which it was entitled, and thereby violated the Constitution of the United States.

The judgment of the Supreme Court of California must, therefore be reversed, and the cause be remanded for further proceedings not inconsistent with this opinion.

*And it is so ordered.*

MR. JUSTICE BROWN concurs in the result.